UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
Case No. 1:21-cv-00753-JLS

_____

Deborah-Lee Adams, individually and on
behalf of all others similarly situated,

          Plaintiff,


     - against –


Tops Markets, LLC,

          Defendant.

_____


**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S</u>**
**<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ..............................................................1

BACKGROUND .................................................................................................................3

LEGAL STANDARD...........................................................................................................4

ARGUMENT ......................................................................................................................4

I.      Plaintiff fails to state a claim under the VCPA....................................................4

II.     Plaintiff has not plausibly alleged any injury. .....................................................6

III.    Plaintiff has not stated a claim for breach of express warranty. ........................7

IV.    Plaintiff has failed to state a claim for breach of implied warranty of merchantability. .....9

V.     Plaintiff has not pleaded a violation of the Magnuson-Moss Warranty Act....................10

VI.    Plaintiff has failed to state a claim for negligent misrepresentation.................................12

VII.   Plaintiff has failed to plead a claim for fraud. ..................................................13

VIII.  Plaintiff has not stated a claim for unjust enrichment........................................15

IX.    Plaintiff lacks standing to seek injunctive relief. ..............................................16

CONCLUSION..................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)...................................................................13

*Anschutz Corp. v. Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012)....................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................4, 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)....................................................................14

*Barreto v. Westbrae Natural, Inc.*,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021)..................................................15, 16

*Barton v. Pret A Manger (USA) Ltd.*,
    --- F. Supp. 3d ----, 2021 WL 1664319 (S.D.N.Y. Apr. 27, 2021)..........................9

*Belcastro v. Burberry Ltd.*,
    2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) ..............................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................4, 7

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020)...................................................................17

*Beth Israel Med Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006)...................................................................15

*Borenkoff v. Buffalo Wild Wings, Inc.*,
    2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ............................................6, 7

*Bowling v. Johnson & Johnson*,
    65 F. Supp. 3d 371 (S.D.N.Y. 2014).......................................................11

*Budhani v. Monster Energy Co.*,
    --- F. Supp. 3d ----, 2021 WL 1104988 (S.D.N.Y. Mar. 22, 2021) ................. *passim*

*Campbell v. Whole Foods Market Grp., Inc.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021).............................................. *passim*

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..................................................................................16

*Corsello v. Verizon N.Y., Inc.*,
    967 N.E.2d 1177 (N.Y. 2012) ...............................................................15

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) ...............................................8, 10

*Crigger v. Fahnestock and Co.*,
    443 F.3d 230 (2d Cir. 2006) ..................................................................13

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir. 2020) ..............................................................12

*Glassford v. DuFresne & Assocs., P.C.*,
    124 A.3d 822 (Vt. 2015) ..........................................................................5

*Hairston v. South Beach Beverage Co.*,
    2012 WL 1893818 (C.D. Cal. May 18, 2012) .......................................11

*Hume v. Lines*,
    2016 WL 1031320 (W.D.N.Y. Mar. 8, 2016) .........................................9

*In re Frito-Lay North America, Inc. All Natural Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .......................................11

*Lamb v. Cookware Co. (USA)*,
    2020 WL 3179682 (S.D.N.Y. June 15, 2020) .......................................10

*Marino v. Coach, Inc.*,
    264 F. Supp. 3d 558 (S.D.N.Y. 2017) ...................................................16

*McVetty v. TomTom N. Am., Inc.*,
    2021 WL 965239 (S.D.N.Y. Mar. 13, 2021) ...........................................7

*Melendez v. ONE Brands, LLC*,
    2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) .......................................16

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) .............................................................16, 17

*Niles v. Beverage Mktg. USA, Inc.*,
    2020 WL 4587753 (E.D.N.Y. Apr. 16, 2020) .........................................9

*Picket Fence Preview, Inc. v. Zillow, Inc.*,
    2021 WL 3680717 (D. Vt. Aug. 19, 2021) ..............................................4

*Reid v. GMC Skin Care USA Inc.*,
    2016 WL 403497 (N.D.N.Y. Jan. 15, 2016)........................................................................11

*Silva v. Smucker Natural Foods, Inc.*,
    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..............................................................10

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016).............................................................2, 8, 9

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ......................................................................8, 9

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021)......................................................12, 13, 15, 16

*Wynn v. Topco Assocs., LLC*,
    2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ..........................................................10, 18

**Statutes**

15 U.S.C. § 2301(6) ....................................................................................................11

15 U.S.C. § 2310(d)(1) ..........................................................................................10, 12

15 U.S.C. § 2310(d)(3) ................................................................................................12

15 U.S.C. § 2311(d) ....................................................................................................11

21 U.S.C. § 341 et seq..................................................................................................11

21 U.S.C. § 393(b)(2)(A)............................................................................................11

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq........................................ *passim*

N.Y. U.C.C. § 2-607(3)(a) .......................................................................................7, 8

Vt. Stat. Ann. tit. 9, § 2453(a)...........................................................................1, 3, 4, 5

**Rules**

Fed R. Civ. P. 8.............................................................................................................4

Fed. R. Civ. P. 9(b) ................................................................................................13, 14

## INTRODUCTION AND SUMMARY OF ARGUMENT

Deborah-Lee Adams alleges that Tops Markets, LLC ("Tops") misrepresents on the can the number of cups of coffee that can be brewed from a Tops-brand ground coffee product. Adams doesn't allege that the can contains less ground coffee than represented; rather, she claims that the ground coffee in the can yields fewer cups of brewed coffee than stated on the label, based on some unidentified laboratory testing. The amended complaint doesn't contain any factual allegations regarding Adams' personal experience with the coffee product, including how she brewed her coffee, how many cups of coffee she personally obtained, the size of the cups she expected to make (or that she, in fact, made, if any), or whether she followed any brewing instructions. Nor does the amended complaint provide any facts regarding how the laboratory testing was done, how the coffee was brewed, the size of the cups of coffee made by laboratory personnel, if any, or how this laboratory testing is relevant to Adams' personal experience with the coffee product. For these and other reasons set forth below, the Court should dismiss the amended complaint for failure to state a claim.

*First*, for the above reasons, the amended complaint lacks sufficient facts to state a plausible claim of deception under the Vermont Consumer Protection Act ("VCPA") or that Adams relied on the reference to the number of cups when buying the coffee product.

*Second*, Adams has not plausibly alleged any injury. Although she alleges that she paid a price premium for the coffee product compared to similar products, the coffee product at issue is a *store brand*, and Adams has not alleged any plausible basis from which the Court could infer that the coffee product was priced higher than comparable products or that it was worth less than Adams paid.

*Third*, the breach of express-warranty claim fails for the same reasons and because Adams did not provide pre-suit notice of her claim to Tops.

*Fourth*, the breach of implied-warranty claim likewise fails for failure to provide pre-suit notice and because Adams has not alleged that the coffee product was unfit for human consumption.

*Fifth*, Adams' claim for violation of the Magnuson-Moss Warranty Act ("MMWA") fails because (1) she has failed to plead any state-law warranty claim; (2) the labeling statement at issue is not a "written warranty" under the MMWA; (3) the label is governed by federal law; and (4) a putative class action cannot be brought under the MMWA unless there are at least 100 *named* plaintiffs.

*Sixth*, the negligent-misrepresentation claim fails for several reasons, including that Adams has not alleged (and cannot allege) the existence of a special relationship between herself and Tops.

*Seventh*, Adams has not stated a claim for fraud because she has failed to allege the requisite facts with specificity and has failed to plead any fraudulent intent, among other things.

*Eighth*, the unjust-enrichment claim fails because it is duplicative of Adams' other claims.

*Finally*, Adams lacks standing to seek injunctive relief because there is no real or imminent threat of future harm. Adams now possesses the information she allegedly lacked previously and thus she cannot be harmed in a similar way in the future. Moreover, the label no longer references the number of cups, so there is no risk of future injury.

**BACKGROUND**

Adams' initial complaint alleged that she bought an 11.5 oz. can of Tops-brand 100% Pure Coffee, French Roast, Ground Coffee, Dark Roast ("the Product") "on one or more occasions within the statute of limitations for each cause of action alleged, from one or more Tops locations, including at 12 S Main St & Norton Pl, Rutland, VT 05701, in 2020 and/or 2021, among other times." (Compl. ¶ 31.) After Tops informed Adams' counsel that the Product had not been sold in Vermont, Adams amended her complaint to allege that she bought the Product "on one or more occasions within the statute of limitations for each cause of action alleged, from one or more Tops locations *in New York*, in 2020 and/or 2021, among other times." (First Am. Compl. ("FAC") ¶ 31) (emphasis added).

Although Adams does not identify the specific Tops store(s) where she purportedly bought the Product, and she has not provided any receipt, she alleges that she paid at least $3.39 for the Product. (FAC ¶¶ 20, 32.) The front of the coffee can contains a close-up picture of the top of a steaming cup of coffee and just above it a small outline of a coffee mug with "90 Cups" inside it. (FAC ¶ 6.) According to the amended complaint, Adams allegedly relied on this picture to mean that, when used as directed, the Product could produce 90 cups of brewed coffee. (FAC ¶ 33.) Adams alleges, however, that "[i]ndependent laboratory analysis determined that the Product can only make seventy-two (72) cups of coffee, eighteen (18) fewer cups than promised." (FAC ¶ 11.) She doesn't allege how many cups of coffee she personally made from the Product, the size of the cups of coffee she personally made (i.e., the number of ounces), or even that she brewed her coffee in accordance with the directions. Based on these laboratory results alone, Adams contends that the Product is worth "materially less than [its] value as represented by" Tops. (FAC ¶ 17.)

Adams purports to bring numerous causes of action, including violations of the VCPA and MMWA, breaches of express warranty and of the implied warranty of merchantability, negligent

misrepresentation, fraud, and unjust enrichment. (FAC ¶¶ 49-69.) Although the Product was not sold in Vermont and there are no allegations in the amended complaint relating to purchases by Adams or others in Pennsylvania, Adams seeks to represent a proposed class of Vermont and Pennsylvania consumers who bought the Product during the limitations period. (FAC ¶ 41.)

## LEGAL STANDARD

A court should dismiss a complaint if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at 678. Mere legal conclusions are not "facts" for Rule 8 purposes. *Id.* at 678-79; *Twombly*, 550 U.S. at 555. Nor is it enough to allege facts "merely consistent with" liability or showing only that entitlement to relief is *possible*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. The factual allegations "must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Unless the complaint pleads sufficient facts to cross the line "from conceivable to plausible," it must be dismissed. *Twombly*, 550 U.S. at 570.

## ARGUMENT

**I.    Plaintiff fails to state a claim under the VCPA.**

The VCPA prohibits "unfair or deceptive acts or practices in commerce[.]" Vt. Stat. Ann. tit. 9, § 2453(a). "To establish a 'deceptive act or practice' under the [VCPA] requires three elements: (1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." *Picket Fence Preview, Inc. v. Zillow, Inc.*, 2021 WL 3680717, at *5 (D.

Vt. Aug. 19, 2021) (quoting *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998)). Moreover, a private claim under the VCPA requires the plaintiff to allege that she "contract[ed] for goods … in reliance upon … or … sustain[ed] damages or injury as a result of … false or fraudulent representations or practices prohibited by section 2453[.]" *Glassford v. DuFresne & Assocs., P.C.*, 124 A.3d 822, 832-33 (Vt. 2015) (citing Vt. Stat. Ann. tit. 9, § 2461(b)). Adams has not pleaded sufficient facts to state a VCPA claim.

Federal pleading rules require more than just "labels and conclusions" and "a formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. Adams has failed to plead the factual circumstances surrounding her purchase and use of the Product. For example, Adams alleges in conclusory fashion that she "relied on the representations identified here – that when following the directions for use, the Product could provide 90 cups of coffee." (FAC ¶ 33.) But Adams doesn't identify any directions for use, nor does she state the size of the "90 cups" of coffee she believed she would be able to make. Moreover, the "90 cups" reference on the label does not state that the Product provides 90 cups "when following the directions for use," as Adams alleges; it just states "90 cups." The amended complaint does not contain sufficient factual information to state a claim. Other than the reference to "90 cups," what information on the label, if any, did Adams read before buying the Product? What specific expectations, if any, did Adams form based on the information on the label? How did Adams make her coffee? Did she follow any brewing directions or, like many people, did she make the coffee according to her own personal taste? How large were the cups of coffee she prepared?

To the extent Adams decided to buy the Product after reading the front of the label (*see* FAC ¶ 6), it only states "90 cups," without reference to the *size* of the cups. Although Adams alleges that an independent laboratory determined that the Product can yield only 72 cups of coffee,

she pleads no facts regarding how this testing was done, how the coffee was brewed, the size of the cups of coffee made by laboratory personnel, if any, or how this laboratory testing relates to her personal experience with the Product. Accordingly, Adams has not sufficiently pleaded a deceptive act or that she relied upon the labeling statement when buying the Product.

## II. Plaintiff has not plausibly alleged any injury.

Even if Adams had sufficiently alleged that the labeling was misleading, she has not pleaded facts showing she that was injured by her purchase of the Product. Adams doesn't dispute that she received 11.5 ounces of ground coffee, as promised. (FAC ¶ 1.) She alleges instead that the Product is sold at a price premium. But to allege a price-premium injury, Adams must show "either that because of a misrepresentation [she] received a good worth less than what [s]he paid for [it], i.e., a good of inferior quality, or that because of a misrepresentation [she] paid an inflated price." *Belcastro v. Burberry Ltd.*, 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017). The amended complaint fails to plausibly plead injury under either theory.

Adams vaguely alleges that she paid a "price premium compared to other similar products, $3.39 per 11.5 OZ, a higher price than it would otherwise be sold for," absent the cups reference on the label. (FAC ¶ 20.) But Adams has not alleged any facts showing how or why the "90 cups" reference would impact the "price per ounce" of the Product. *See Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018) (finding that complaint failed to allege a price-premium injury because it was "unclear from the [complaint] exactly <u>how</u> the cost of the items was affected, or <u>why</u> [plaintiff] believes she paid a premium"). To the extent Adams is contending that 11.5 ounces of the ground coffee is not worth $3.39, the complaint lacks any factual support for this contention—which goes directly to the plausibility of her injury claim. Unlike nearly every other case of this type, the product at issue here is a *store brand* (FAC ¶¶ 1, 6), and as any consumer well knows, the store brand of anything is nearly always cheaper than the

comparable brand-name products. Accordingly, Adams' "invocation of the word 'premium' is nothing more than a 'legal conclusion couched as a factual allegation,' and that allegation is insufficient to state a claim for relief that is 'plausible on its face.'" *See Borenkoff*, 2018 WL 502680, at *4 (quoting *Iqbal*, 566 U.S. at 678).

Adams alleges elsewhere in the amended complaint that she selected the Product over other products that "did not misrepresent their attributes *and/or lower-priced products* which did not make the claims made by Defendant." (FAC ¶ 38) (emphasis added). This equivocal allegation also fails to allege any injury. Adams has not pleaded that she chose the Product over less expensive ground coffee products, only that she *might* have done so. If Adams actually chose the Product over a less costly alternative, she could have said so. *See Campbell v. Whole Foods Market Grp., Inc.*, 516 F. Supp. 3d 370, 391 (S.D.N.Y. 2021) (rejecting similar equivocal allegation pleaded in the alternative). In any event, Adams hasn't identified any comparable products that cost less. *See McVetty v. TomTom N. Am., Inc.*, 2021 WL 965239, at *4 (S.D.N.Y. Mar. 13, 2021) (finding that plaintiff failed to allege he paid a premium when he failed to allege "what a comparable alternative would have cost"). Considering that the Product is a store brand and very likely cost less than the alternatives, Adams has not pleaded sufficient facts to state a claim.

For all these reasons, Adams has not "nudged [her] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

## III. Plaintiff has not stated a claim for breach of express warranty.

An express-warranty claim requires "a buyer [to] provide the seller with timely notice of the alleged breach of warranty." *Budhani v. Monster Energy Co.*, --- F. Supp. 3d ----, 2021 WL 1104988, at *10 (S.D.N.Y. Mar. 22, 2021) (citing N.Y. U.C.C. § 2-607(3)(a)).[1] Although Adams

---

[1] N.Y. U.C.C. § 2-607(3)(a) states that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

tries to evade the notice issue through vague and ambivalent allegations, she did *not* provide any notice to Tops. The amended complaint alleges that Adams "provided or will provide notice to defendant, its agents, representatives, retailers and their employees." (FAC ¶ 58.) But as another court recently found with regard to this same allegation, this is "insufficient" to show that the plaintiff provided timely notice because "the statement is wholly equivocal." *Campbell*, 516 F. Supp. 3d at 391. The statement "does not allege that notice has been provided, only that Plaintiff 'provided or will provide' notice. If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future. Plaintiff has not adequately pleaded that she in fact provided notice." *Id.*; *see also Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 585 & n.11 (S.D.N.Y. 2021) (finding that identical "provided or will provide notice" allegation was insufficient because there was "no indication" in the complaint that plaintiffs provided timely notice).

Further demonstrating that Adams did not provide notice to Tops, she alleges in a conclusory manner that Tops "received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices." (FAC ¶ 59.) But even if Adams had made specific factual allegations regarding other complaints or lawsuits, which she did not, notice of complaints made by third parties is insufficient to satisfy Adams' statutory requirement to provide notice of her *own* claim. Section 2-607(3)(a) states that "*the buyer* must … notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a) (emphasis added).

The law requires notice, in part, "to give the seller a chance to prepare for negotiation and litigation." *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (citation omitted); *see Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014)

("The purpose of the [notice requirement] is not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy"). "[T]he fact that [Tops] may have been aware of similar claims involving [Tops'] labels did not put [Tops] on notice of Plaintiff's particular claims." *Singleton*, 2016 WL 406295, at *12; *Niles v. Beverage Mktg. USA, Inc.*, 2020 WL 4587753, at *6 (E.D.N.Y. Apr. 16, 2020) ("Even if the plaintiffs were correct that the defendant companies were on notice that there is an issue with the product by virtue of the California lawsuit, the plaintiffs have not pointed to any law that relieves them of their own obligation to provide notice before seeking a remedy."); *Barton v. Pret A Manger (USA) Ltd.*, --- F. Supp. 3d ----, 2021 WL 1664319, at *11-12 (S.D.N.Y. Apr. 27, 2021) (holding that reliance on third-party complaints is insufficient to satisfy the plaintiff's notice requirement) (citing cases).

Adams has failed to plead a claim for breach of express warranty for other reasons. A claim for breach of express warranty requires "(i) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach." *Hume v. Lines*, 2016 WL 1031320, at *5 (W.D.N.Y. Mar. 8, 2016) (quoting *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)). For the same reasons discussed in sections I and II, Adams has not plausibly pleaded any of these elements and her express-warranty claim necessarily fails.

## IV.     Plaintiff has failed to state a claim for breach of implied warranty of merchantability.

Adams likewise has not stated an implied-warranty claim. First, as with the express-warranty claim, she failed to provide notice of the alleged breach to Tops. *Campbell*, 516 F. Supp. 3d at 392 ("The U.C.C.'s notice requirement also applies to claims for breach of implied warranty.") (citing cases); *Tomasino*, 44 F. Supp. 3d at 260-61 (dismissing express- and implied-warranty claims for lack of notice).

Second, Adams does not allege that the Product is unfit for consumption. A breach of the implied warranty of merchantability occurs when the product is "unfit for the ordinary purposes for which such goods are sold." *Budhani*, 2021 WL 1104988, at *11 (citing N.Y. U.C.C. § 2-314(2)(c)). A warranty of merchantability "does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality." *Cosgrove*, 520 F. Supp. 3d at 586 (citations omitted). "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Silva v. Smucker Natural Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied-warranty claim against root beer manufacturer because the complaint "makes no allegation that [the product] is unfit for human consumption"); *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021) (same as to almond milk); *Cosgrove*, 520 F. Supp. 3d at 586 (same as to powdered tea mix); *Budhani*, 2021 WL 1104988, at *11 (no allegation that energy drink was "unfit to drink"). Accordingly, the implied-warranty claim should be dismissed.

## V.     Plaintiff has not pleaded a violation of the Magnuson-Moss Warranty Act.

Adams' claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., suffers the same fate. The MMWA allows a consumer damaged by the failure of a warrantor to comply with any obligation under a written warranty to bring suit, *see* 15 U.S.C. § 2310(d)(1), but the statute incorporates the requirements of a state-law cause of action. *Lamb v. Cookware Co. (USA)*, 2020 WL 3179682, at *3 (S.D.N.Y. June 15, 2020) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.") (citations omitted). Because Plaintiffs' state-law warranty claims fail, the MMWA claim fails too. *Id.*

The MMWA claim fails for multiple other reasons. The definition of a written warranty under the MMWA is narrow and is not met here. A "written warranty" is "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and *affirms or promises that such material or workmanship is defect free* or *will meet a specified level of performance over a specified period of time*." 15 U.S.C. § 2301(6) (emphasis added). The "90 cups" statement on the label is not a warranty against a product defect, nor does it promise a specified level of performance over a specified time period—it's just part of the product description. *See Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 377-78 (S.D.N.Y. 2014) ("'Restores Enamel' [on mouthwash label] is a product description, not a promise of performance over time."); *In re Frito-Lay North America, Inc. All Natural Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) ("An 'All Natural' label does not warrant a product free from defect … Nor does it constitute a promise that the product will meet a specified level of performance over a specified period of time.") (cleaned up).

Adams' MMWA claim also fails because the Product's label is governed by federal law. The MMWA is "inapplicable to *any written warranty* the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d) (emphasis added); *see Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, at *13 (N.D.N.Y. Jan. 15, 2016). The Federal Food, Drug, and Cosmetic Act ("FDCA") governs the labeling and packaging of food products. *See* 21 U.S.C. § 341 et seq.; § 393(b)(2)(A). Accordingly, the MMWA claim fails as a matter of law on this additional ground. *Hairston v. South Beach Beverage Co.*, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (dismissing MMWA claim because "the FDCA and FDA labeling regulations govern the Lifewater labeling").

Finally, the MMWA claim is procedurally defective because, as the Ninth Circuit recently held, the Class Action Fairness Act does not override the MMWA's numerosity requirement of at least 100 *named* plaintiffs. *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1032-35 (9th Cir. 2020); 15 U.S.C. § 2310(d)(3) ("No claim shall be cognizable in a suit brought [in a district court] … if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."). Because Adams is the only named plaintiff here, she lacks standing to bring an MMWA claim.

## VI.   Plaintiff has failed to state a claim for negligent misrepresentation.

To allege a claim for negligent misrepresentation, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012). As discussed in sections I and II, Adams has not plausibly pleaded a false representation, that she reasonably relied on the "90 cups" reference on the label, or that she was injured as a result. In addition, Adams has not alleged that Tops had knowledge that the "90 cups" reference was important to Adams, nor has Adams alleged any special relationship between herself and Tops.

The existence of a special relationship depends on "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (quoting *Suez Equity Invs., L.P. v.*

*Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)). Although Adams alleges that Tops has been "holding itself out as having special knowledge and experience [in] this area," (FAC ¶ 63), she provides no factual support for this allegation, which must be pleaded with particularity to satisfy Rule 9(b). *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005). The *Twohig* court held that a nearly identical allegation was "conclusory" and insufficient to state a claim. *Twohig*, 519 F. Supp. 3d at 167 (citing *Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do")); *Budhani*, 2021 WL 1104988, at *10 (finding the same nearly identical allegation insufficient).

Moreover, the purchase of food products from a supermarket is not the type of transaction that gives rise to a special relationship for purposes of a negligent-misrepresentation claim. *Id.*; *Campbell,* 516 F. Supp. 3d at 389 (purchase of graham crackers at supermarket was a "basic commercial transaction"); *Budhani*, 2021 WL 1104988, at *10 (purchase of energy drink with allegedly deceptive label did not establish special relationship); *Twohig*, 519 F. Supp. 3d at 166-67 (citing cases); *see also Aetna*, 404 F.3d at 584 (finding that "no duty of care arises" for purposes of a negligent-misrepresentation claim when the challenged statement is "directed at a faceless or unresolved class of persons"). This Court should reach the same conclusion and dismiss the negligent-misrepresentation claim.

## VII.    Plaintiff has failed to plead a claim for fraud.

To plead a claim for fraud, the plaintiff must allege "(1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock and Co.*, 443 F.3d 230, 234 (2d Cir. 2006). A fraud claim must satisfy the particularity requirements of Rule 9(b), which means the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and

when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Adams' purported fraud claim fails because she has not pleaded a material misrepresentation, she has not alleged with specificity when and where she saw the allegedly deceptive packaging, that Tops had any fraudulent intent, that she relied on the "90 cups" reference on the label, or that she was injured as a result.

Adams' claim of fraud consists solely of two allegations in the amended complaint. (FAC ¶¶ 67-68.) Neither allegation identifies any material misrepresentation, reliance by Adams on the same, or an alleged injury, and for the reasons discussed in sections I and II, the amended complaint contains insufficient facts to satisfy Rule 9(b). With regard to her purported purchase of the Product, Adams alleges only that she "bought the Product on one or more occasions within the statute of limitations[,] from one or more Tops locations in New York, in 2020 and/or 2021, among other times." (FAC ¶ 31.) This does not sufficiently identify the date(s) or place(s) of purchase.

Similarly, Adams alleges that Tops' "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (FAC ¶ 68.) But even if this allegation about Tops' knowledge were true, "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent[.]" *Campbell,* 516 F. Supp. 3d at 391 (citations omitted). Rule 9(b) "requires a plaintiff to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Budhani*, 2021 WL 1104988, at *12 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). This inference can arise "by alleging facts to show that defendant[] had both motive and opportunity to commit fraud," or "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Lerner*, 459 F.3d at 290-91). Adams has not alleged either of these.

Numerous courts in New York have dismissed complaints of fraud making substantially similar allegations, for failure to plead fraudulent intent. *See id.* (dismissing claim based on the conclusory allegation that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled customers"); *Twohig*, 519 F. Supp. 3d at 166 (same); *Campbell,* 516 F. Supp. 3d at 391 ("Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true."); *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (same). As in these cases, Adams has not pleaded fraudulent intent.

For all these reasons, the fraud claim should be dismissed.

## VIII. Plaintiff has not stated a claim for unjust enrichment.

A claim for unjust enrichment requires the plaintiff to show "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). "[U]njust enrichment is not a catchall cause of action to be used when others fail[,]" and the claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Campbell,* 516 F. Supp. 3d at 394 (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)). Rather, unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract not committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 967 N.E.2d at 1185.

Adams' unjust-enrichment claim consists of a single allegation: "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of

inequitably obtained profits." (FAC ¶ 69.) This claim fails as a matter of law because it "is a mere repackaging of [Adams'] other claims based on the alleged misrepresentations on the Product's packaging. It relies on the same factual allegations and the same theory of liability as Plaintiff's other theories of recovery." *Campbell,* 516 F. Supp. 3d at 394 (cleaned up) (dismissing claim based on this same one-sentence allegation); *see Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *8 (E.D.N.Y. Mar. 16, 2020) ("Because Melendez's unjust enrichment claim is based on the same allegations as his other claims, and because Melendez has not shown how it differs from these other claims, his unjust enrichment claim is duplicative and must therefore be dismissed") (dismissing unjust-enrichment claim based on this same one-sentence allegation); *Budhani*, 2021 WL 1104988, at *13 (same); *see also Twohig*, 519 F. Supp. 3d at 168 (dismissing unjust-enrichment claim as duplicative); *Barreto*, 518 F. Supp. 3d at 808-09 (same). Accordingly, the unjust-enrichment claim should be dismissed.

## IX. Plaintiff lacks standing to seek injunctive relief.

Adams seeks an order requiring Tops to remove or correct the challenged practices and representations. (FAC, Prayer for Relief ¶¶ 2-3.) A plaintiff lacks standing to pursue injunctive relief if she is unable to establish a "real or immediate threat" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Although past injury may establish standing to seek money damages, it does not confer standing to seek injunctive relief "unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 565 (S.D.N.Y. 2017) (finding that "[a] plaintiff seeking injunctive relief cannot rely on past injury," but "must allege a likelihood of future harm" (citing *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011))).

Adams is not entitled to injunctive relief because she has not alleged a real or immediate threat of future injury. She alleges that she "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition." (FAC ¶ 40.) However, Adams "is aware of the allegedly deceptive packaging, and therefore cannot demonstrate that she will be harmed in a similar way in the future." *Campbell,* 516 F. Supp. 3d at 394. The *Campbell* court rejected a nearly identical allegation to the one Adams makes here: "Plaintiff says that she won't buy the product if the label remains misleading. If she does purchase the product again in the future, she will not be harmed in a similar way, because any future purchase will be made with knowledge of the product's ingredients, and because she will only purchase the product if the allegedly misleading representations of which she complains are fixed." *Id.* at 395; *see Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-49 (2d Cir. 2020) (finding that past purchasers who claim they were deceived by a product's packaging lack standing to seek injunctive relief because if they choose to buy the product again, they do so armed "with exactly the level of information that they claim they were owed from the beginning"); *Budhani*, 2021 WL 1104988, at *13 (dismissing nearly identical injunctive-relief claim for the same reasons).

There is no real or immediate threat of future injury for the additional reason that the label of the Product was changed many months ago—before this lawsuit was filed—and it no longer contains a reference to the number of cups. Accordingly, there is no possibility of future injury for Adams or any member of the class she seeks to represent. *See Nicosia*, 834 F.3d at 239 (finding that plaintiff did not have standing for injunctive relief when the defendant had stopped selling the product at issue).

## **CONCLUSION**

For all the foregoing reasons, Tops Markets, LLC requests that the Court dismiss the First Amended Complaint for failure to state a claim.

Dated: October 1, 2021
New York, New York

Respectfully submitted,

SHOOK HARDY & BACON L.L.P.

*/s/ William E. Vita*
William E. Vita – Bar No. 1963461
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: (212) 989-8844
wvita@shb.com

*Attorneys for Tops Markets, LLC*