UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Deborah-Lee Adams, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    - against -<br><br>Tops Markets, LLC,<br><br>       Defendant | 1:21-cv-00753-JLS-HKS<br><br><br><br>Second Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

   Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

   1. Tops Markets, LLC ("defendant") manufactures, markets, labels and sells 100% Pure Coffee, French Roast, Ground Coffee, Dark Roast, under its TOPS private label brand, in cans of 11.5 OZ (326 g), which claims to make 90 cups of coffee ("Product").

   2. TOPS private label products are made by third-party manufacturers but sold under the name of the retailer.

   3. In recent years, the quality of private label – sometimes referred to as "generic" or "store brand" – products have increased, such that the quality exceeds that of the major national brands.

   4. TOPS private label products have an industry-wide reputation for quality and value.

5.     TOPS promotes these attributes of its private label offerings on its website.

TOPS Brand Products

Your family always comes first. And, while it can be difficult to create nutritious meals that fit within your schedule and budget, you take pride in what you place on your table.

That's why your friends at TOPS are constantly working to improve our products, so that you can give your family delicious, high-quality foods at an affordable price. We're excited about the changes we've made to TOPS Brand Products, with cleaner, simpler ingredients and great new packaging on more than 2,000 products. We'll continue to work hard every day to provide the taste, quality and value you need for a home made happy.

All smiles with

Tops Brand Products



6.     One of the private label products sold by TOPS is its French Roast, Ground Coffee, Dark Roast, in cans of 11.5 OZ (326 g).



7.     The Product emphasizes its ability to provide "90 CUPS" of coffee prominently on the front label.

8.     Reasonable consumers, like Plaintiff, viewed this front label, and expected that "90 CUPS" meant the Product contains enough ground coffee to make 90 cups of coffee.

9.     The Preparation Instructions on the label instruct a purchaser to use one tablespoon

for each cup of six ounces of water.

10. Reasonable consumers, including Plaintiff, read, and relied on the front label stating, "90 CUPS."

11. Reasonable consumers, including Plaintiff, read, and relied on the preparation instructions to use one tablespoon for each cup of six ounces of water.

12. The average weight per tablespoon was 4.5g.

13. Given that the Product purports to contain 326g, this means the Product only contains enough ground coffee for 72 tablespoons, capable of producing 72 cups of coffee.

14. However, the representation that the Product makes "90 CUPS" of coffee is false, deceptive, and misleading.

15. When consumers, like Plaintiff, followed the Product's directions for use, they could not brew anywhere close to ninety (90) cups.

16. Plaintiff followed the instructions for use provided on the Product and could not brew 90 cups.

17. Independent laboratory analysis determined that the Product can only make 72 cups of coffee, 18 fewer cups than promised. *See* Exhibit "A," Product Analysis.

18. This means that the Product delivers twenty percent fewer cups of coffee than promised on the label, which is what consumers paid for.

19. Through the statement, "90 CUPS," reasonable consumers, including Plaintiff, expected no less than 90 cups of coffee, when used according to the label's directions.

20. No reasonable consumer will expect the number of cups was closer to 70 than 90.

21. Defendant failed to accurately calculate and verify the number of cups based on the Product's contents and preparation instructions.

22. This error likely resulted from failing to consider the weight of the ground coffee per serving when creating prep instructions based on volume measurements.

23. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product, relative to itself and other comparable products.

24. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

25. The value of the Product that plaintiff purchased was materially less than their value as represented by defendant.

26. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

27. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for them.

28. The Product is sold for a price premium compared to other similar products, $3.39 per 11.5 OZ, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

29. Based on the Product's price of $3.39 and its promise to make 90 cups, this means the cost per cup is approximately $0.038.

| Price ($) | Cups | Cost per Cup ($) |
|---|---|---|
| 3.39 | 90 | 0.037666667 |
| 2.712 | 72 | 0.037666667 |

30. However, because the Product only provides 72 cups, the true cost of the Product should be $2.71.

5

31. This means that the Product is sold for $0.68 more than if it truthfully were labeled as being able to provide 72 cups.

32. Other brands of ground coffee which are sold in containers of 11.5 OZ (326 g) and promise 90 cups provide at least 90 cups and are sold for $3.09.

33. Plaintiff overpaid in two ways, because (1) she was sold ground coffee for 90 cups, when it only made 72 cups, and (2) she bought Defendant's Product instead of competitor products, which cost less, and did provide 90 cups of coffee.

## Jurisdiction and Venue

34. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

36. Plaintiff Deborah-Lee Adams is a citizen of Vermont.

37. Defendant Tops Markets, LLC is a New York limited liability company with a principal place of business in Williamsville, Erie County, New York and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

38. Tops Markets Intermediate Corporation is a Delaware corporation with a principal place of business in Williamsville New York, and a member of Defendant.

39. Therefore, Defendant is a citizen of Delaware and New York

40. The parties are citizens of different states.

41. Venue is proper because defendant is a resident of this district based on its principal place of business at 6363 Main St Williamsville NY 14221-5855, Erie County, New York.

Parties

42. Plaintiff Deborah-Lee Adams is a citizen of Castleton, Rutland County, Vermont.

43. Defendant Tops Markets, LLC, is a New York limited liability company with a principal place of business in Williamsville, New York, Erie County.

44. Defendant operates close to 150 supermarkets under the Tops Friendly Markets brand in New York, Pennsylvania, and Vermont.

45. Having been founded almost one hundred years ago, Tops has always been known for high quality, honesty, and value, helping consumers get necessary grocery store staples at affordable prices.

46. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from one or more Tops locations in New York, in 2020 and/or 2021, among other times.

47. Plaintiff lives on the border of New York and Vermont and often crosses the border for work and other reasons.

48. While Plaintiff is in New York, she shops at various Tops markets, which are approximately an hour away, in Chestertown and Bolton Landing.

49. Plaintiff bought the Product at or exceeding the above-referenced price.

50. Plaintiff relied on the representations on the front label, which she saw, that said, "90 CUPS."

51. Plaintiff relied on the preparation instructions regarding the use of one tablespoon for six ounces of water.

52. Plaintiff is conscious of the value she gets for her dollar when shopping at the grocery store.

53. Plaintiff relied on Defendant's labeling to provide 90 cups of coffee and paid no less than the above-referenced price.

54. Had she known the Product would provide 20% fewer cups, she would not have bought the Product or would have paid less.

55. Plaintiff did not expect twenty percent fewer cups of coffee.

56. Plaintiff did not, nor could be expected to know, that the Product would not provide the number of cups promised on the label.

57. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

58. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

59. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

60. The class will consist of all Vermont and Pennsylvania residents who purchased the Product during the statutes of limitations for each cause of action alleged.

61. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

62. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

63. Plaintiff is an adequate representative because her interests do not conflict with other members.

64. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

65. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

67. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Vermont Consumer Protection Act ("VCPA"),
9 Vt. Stat. Ann §§ 2451, et seq.
Pennsylvania Unfair Trade Practices and Consumer Protection.
Law ("UTPCPL") 73 P.S. §201-1 et seq.</u>

<u>(Consumer Protection Statute)</u>

68. Plaintiff incorporates by reference all preceding paragraphs.

69. The VCPA and UTPCPL require (1) a representation, omission, or practice likely to mislead consumers, (2) the consumer's reasonable interpretation, and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product.

70. Plaintiff and class members desired to purchase ground coffee which could make the number of cups promised on the label, 90 cups.

71. Plaintiffs and class members interpreted the language promising 90 cups reasonably and relied on this in conjunction with the preparation instructions.

72. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, because Plaintiff seeks the best value for her dollars, and bought Defendant's Product because it promised 90 cups, instead of less than this amount.

73. Defendant misrepresented the Product through statements, omissions, ambiguities,

half-truths and/or actions.

74. Plaintiff relied on the representation of the Product being able to provide 90 cups of coffee.

75. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

76. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it could make the number of cups promised on the label.

77. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

78. Defendant was in possession of data which proved the Product could not supply 90 cups, yet it failed to accurately modify the 90 cups claim.

79. Defendant is a trusted retailer and a local institution in the areas which it operates.

80. Plaintiffs and other class members have formed special connections to their local Tops Markets, more so than to any of the big box retailers who also sell groceries.

81. Defendant has been in operation for over a hundred years and has built up a significant amount of equity and goodwill, which means consumers will trust them.

82. This position of trust comes with the duty to not mislead its customers.

83. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

84. Defendant received notice and should have been aware of these issues due to quality control procedures it must have conducted on the Product prior to telling consumers it would make

90 cups of coffee.

85. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised, which was a can of ground coffee that would provide 90 cups of coffee.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

87. Defendant had a duty to truthfully represent the Product, which it breached.

88. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

89. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, an established retailer with a unique role in the geographic areas it operates.

90. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

91. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

92. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they could make the number of cups promised on the label

93. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations, based on the data regarding the Product's servings and measurement data it inevitably possessed.

### Unjust Enrichment

94. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated:   October 22, 2021

Respectfully submitted,

13

          Sheehan & Associates, P.C.
          /s/Spencer Sheehan
          60 Cuttermill Rd Ste 409
          Great Neck NY 11021-3104
          Tel: (516) 268-7080
          Fax: (516) 234-7800
          spencer@spencersheehan.com

          Joel Oster
          Of Counsel
          Law Office of Howard W. Rubinstein
          22052 W. 66th St #192
          Shawnee, KS 66226
          Tel: (913) 206-7575
          joel@joelosterlaw.com
          *Pro Hac Vice* Motion Filed or
          Forthcoming

1:21-cv-00753
United States District Court
Western District of New York

Deborah-Lee Adams, individually and on behalf of all others similarly situated,

                            Plaintiff,

- against -

Tops Markets, LLC,

                            Defendant

## First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 22, 2021

                                                        /s/ Spencer Sheehan
                                                          Spencer Sheehan