**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**DEBORAH-LEE ADAMS, individually**
**and on behalf of all others similarly**
**situated,**

           **Plaintiff,**                                    **21-CV-753 (JLS) (HKS)**

      **v.**

**TOPS MARKETS, LLC,**

         **Defendant.**

---

## <u>REPORT, RECOMMENDATION AND ORDER</u>

The Honorable John L. Sinatra, Jr., referred this case to the undersigned for all

pretrial matters and to hear and report upon dispositive motions pursuant to 28 U.S.C.

§§ 636(b)(1)(A), (B) and (C). Dkt. 11.

Plaintiff Deborah-Lee Adams, on behalf of herself and a putative class of

Vermont and Pennsylvania residents who purchased the subject product, filed a

complaint alleging that Defendant Tops Markets, LLC, markets, labels, and sells 11.5

OZ canisters of 100% Pure Coffee, French Roast, Ground Coffee, Dark Roast (the

"Product") which were incapable of producing the "90 CUPS" advertised on the label,

when prepared according to the label's instructions. Dkt. 1. Plaintiff asserts causes of

action for deceptive marketing under the Vermont Consumer Protection Act, breach of

express warranty, breach of the implied warranty of merchantability, violation of the

Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, negligent misrepresentation,

fraud, unjust enrichment, and injunctive relief. *Id.* Plaintiff seeks compensatory,

statutory, and punitive damages. *Id.*

Plaintiff filed a first amended complaint (Dkt. 6) on August 19, 2021. After Defendant moved to dismiss (Dkt. 8), Plaintiff filed a second amended complaint (Dkt. 17). Defendant moves to strike Plaintiff's second amended complaint in its entirety for noncompliance with Fed. R. Civ. P. 15, or, in the alternative, moves to dismiss the complaint for failure to state a claim. Dkt. 22-1, at 12–13. For the following reasons, Defendant's motion to strike the second amended complaint in its entirety is GRANTED, and the Court RECOMMENDS that Defendant's motion to dismiss the first amended complaint (Dkt. 8) be GRANTED.[1]

## **BACKGROUND**

### I.    **MOTION TO STRIKE**

Defendant moves to strike Adams's second amended complaint for noncompliance with Fed. R. Civ. P. 15 ("Rule 15"). Dkt. 22-1, at 12–13. Adams filed her first amended complaint with Defendant's written consent, pursuant to a stipulation. Dkt. 5. Adams thereafter filed a second amended complaint without Defendant's consent or leave of the Court. Dkt. 17. According to Defendant, when a plaintiff amends their complaint once, all other amendments must be under Rule 15(a)(2). Dkt. 22-1, at 12–13. Accordingly, by filing the second amended complaint without Defendant's consent or leave of the Court, Defendant contends that Adams violated Rule 15. *Id.* at 13. On the other hand, because she filed the first amended complaint with Defendant's consent,

---

[1] Because the issues are intertwined, the Court addresses both Defendant's motion to strike and its motion to dismiss. The motion to strike is evaluated as a nondispositive motion pursuant to 28 U.S.C. 636 § (b)(1)(A). *See Mills v. Luplow*, No. 04-CV-00005 (A) (M), 2008 WL 4200599, at *1 (W.D.N.Y. July 1, 2008) ("The motion to strike is a nondispositive motion."), *report and recommendation adopted,* No. 04-CV-005A, 2008 WL 4185696 (W.D.N.Y. Sept. 9, 2008).

Adams argues that it was filed under Rule 15(a)(2), and therefore she retained her right to amend as a matter of course under Rule 15(a)(1). Dkt. 24, at 10.

The Second Circuit has not addressed the issue whether a plaintiff uses or waives its Rule 15(a)(1) right to amend as a matter of course by first amending its complaint under Rule 15(a)(2). In the absence of controlling precedent, the Court concludes that, by filing her first amended complaint pursuant to a stipulation, Adams's right to amend as a matter of course under Rule 15(a)(1) was extinguished.

Adams cites *Ramirez v. Cnty. of San Bernardino*, in which the Ninth Circuit addressed this issue. 806 F.3d 1002 (9th Cir. 2015). There, the court held that "a plaintiff may file his first amended complaint with consent from the opposing party, which satisfies Rule 15(a)(2)" and "[h]e may thereafter utilize his one matter of course amendment under 15(a)(1), so long as he files it timely." *Id.* at 1007. In *Doe #1 v. Syracuse Univ.*, a district court sitting in the Northern District of New York relied on *Ramirez* to hold that the plaintiffs "did not use or waive their Rule 15(a)(1) right to amend" because "[b]oth prior amendments were made pursuant to Rule 15(a)(2), and Plaintiffs subsequently submitted their Third Amended Complaint within 21 days of Defendants' motion to dismiss." 335 F.R.D. 356, 360 (N.D.N.Y. 2020).

In contrast to the Ninth Circuit, the Eleventh Circuit has held that a plaintiff waives the right to amend his complaint as a matter of course if he chooses to file a motion to amend instead of filing the amended complaint as a matter of course. *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 869–70 (11th Cir. 2010) ("Coventry . . . never filed an amended complaint as a matter of course. Instead, it chose to file a motion to amend. We conclude that, in doing so, it waived the right to amend as a matter of

course and it invited the District Court to review its proposed amendments."); *see also Torres v. Garmin Int'l, Inc.*, No. 16-CV-81397, 2017 WL 5634950, at *1 (S.D. Fla. Sept. 22, 2017) ("Because Plaintiff's amended complaint was filed pursuant to an order granting her leave to amend and Plaintiff waived her right to amend as a matter of course, it does not follow that she may now file a second amended complaint as a matter of course. She must seek the Court's authorization by filing a motion to again amend her complaint under Rule 15(a)(2).").

However, *Coventry* does not address whether a plaintiff also waives its right to amend as a matter of course by first amending its complaint with the opposing party's written consent. Here, Plaintiff filed her first amended complaint with Defendant's consent pursuant to a stipulation. Dkt. 5. The Court concludes that, by filing her first amended complaint with Defendant's consent under Rule 15(a)(2), Plaintiff's right to amend as a matter of course under Rule 15(a)(1) was extinguished. *See Ormsby v. Nexus RVs, LLC*, No. 3:19-CV-626-DRL-MGG, 2020 WL 2045781, at *3 (N.D. Ind. Apr. 28, 2020) ("[E]ven if Plaintiffs had filed the First Amended Complaint with consent of the opposing parties under Rule 15(a)(2), their right to amend as a matter of course was still extinguished when they filed their First Amended Complaint."); *Blakley v. Celadon Grp., Inc.*, No. 116CV00351LJMTAB, 2017 WL 819715, at *2 (S.D. Ind. Mar. 2, 2017) (stating that plaintiffs "effectively used up" their right to amend their pleading as a matter of course by amending their complaint for the first time); *Lath v. City of Manchester*, No. 17-CV-075-JL, 2017 WL 2385480, at *2 (D.N.H. May 9, 2017) ("Where plaintiff seeks to amend his complaint a second time . . . Rule 15(a)(2) allows him to do so only with the consent of the defendant(s) or with leave of court."), *report and recommendation*

*approved,* No. 17-CV-75-JL, 2017 WL 2389525 (D.N.H. June 1, 2017); *Davis v. Anderson*, No. 2:16-CV-120-PPS-PRC, 2016 WL 5724470, at *1 (N.D. Ind. Sept. 30, 2016) ("Though Plaintiffs had the right to amend their pleading once as a matter of course, they have already amended their pleading once, so that right has been extinguished. Rule 15(a) does not permit them to file a Second Amended Complaint as a matter of course. After the Amended Complaint, Plaintiffs must obtain either the opposing parties' written consent or the Court's leave to make additional amendments."); *Gaston v. Caugherty*, No. CV 14-1436, 2015 WL 8601232, at *6 (W.D. Pa. Dec. 14, 2015) (rejecting plaintiff's argument that "although she had already amended, her prior amendments were with leave and not as a matter of course, thus when Defendants filed motions to dismiss, Plaintiff was still entitled to amend once as a matter of course"); *Swoope v. Gary Cmty. Sch. Corp.*, No. 2:10 CV 423, 2013 WL 149588, at *1 (N.D. Ind. Jan. 14, 2013) ("The plaintiff may amend his pleading at any time after a motion to dismiss is filed, as a matter of right, provided it precedes the answer. . . . However, a plaintiff uses up that right when he first amends his complaint.") (internal citation omitted).

Therefore, after Plaintiff filed her first amended complaint, all further amendments required Defendant's consent or leave from this Court. *See* Fed. R. Civ. P. 15(a)(2). Consistent with Defendants' request, "courts have routinely stricken the entire pleading where it contains unapproved amendments or was filed without leave of court." *Haner v. Cnty. of Niagara, New York*, No. 19-CV-754-LJV-MJP, 2021 WL 958448, at *3 (W.D.N.Y. Mar. 15, 2021). Because Plaintiff obtained neither leave of court nor Defendant's consent before filing its second amended complaint, Defendant's motion to strike the

second amended complaint in its entirety is granted. Plaintiff's first amended complaint is therefore the operative pleading. *See id.*

## II.    FACTUAL HISTORY

Plaintiff alleges that she purchased the Product "on one or more occasions" from "one or more Tops locations in New York, in 2020 and/or 2021, among other times." Dkt. 6, at ¶ 31. She also alleges that she relied upon the label's representation of "90 CUPS" and expected that it meant the Product contained a sufficient amount of ground coffee to produce 90 cups of coffee when the label's instructions were followed. *Id.* at ¶¶ 33, 35–36. But "[w]hen consumers follow the Product's directions for use, they will not be able to brew anywhere close to ninety (90) cups." *Id.* at ¶ 10. Plaintiff claims that "[i]ndependent laboratory analysis" determined that the Product can only make 72 cups of coffee. *Id.* at ¶ 11. She contends that, had she "known the truth"—that the Product would provide 20% fewer cups, "she would not have bought the Product or would have paid less." *Id.* at ¶¶ 19, 37, 54, 61, 66. Moreover, Plaintiff alleges that she "will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its composition." *Id.* at ¶ 40.

## DISCUSSION

As discussed above, Plaintiff's first amended complaint (Dkt. 6) is the operative pleading and the court therefore evaluates Defendant's motion to dismiss pursuant to the first amended complaint.[2]

---

[2] Instead of opposing Defendant's motion to dismiss the first amended complaint (Dkt. 8), Plaintiff filed a letter informing the Court that she would amend her complaint within 21 days of service of Defendant's motion. Dkt. 12. As the first amended complaint and second amended complaint are substantially similar, the Court considered the parties' submissions regarding the second amended complaint. *See* Dkts. 22-1, 24, 26.

**I.    STATE LAW CONSUMER PROTECTION CLAIMS**

Adams, on behalf of herself and "all Vermont and Pennsylvania residents who purchased the Product during the statutes of limitations," asserts claims under the Vermont Consumer Protection Act, Vt. Stat. Ann. Tit. 9, § 2451 ("VCPA"). *See* Dkt. 6, at ¶¶ 41, 49–54. Adams, a citizen of Vermont, alleges that she bought the Product in New York. *Id.* at ¶¶ 27, 31. Defendant therefore argues that Adams's claim under the VCPA should be dismissed because New York law, not Vermont law, applies to her consumer protection claim. Dkt. 22-1, at 13. In response, Plaintiff argues that it is the conduct alleged in the complaint that matters, and, in any event, the consumer protection statues of Vermont and New York are substantially similar. *Id.* at 11–13.

**A.    Choice-of-Law Analysis**

A federal court sitting in diversity "must apply the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Accordingly, New York choice-of-law rules govern Adams's consumer protection claim.

Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006) (quoting *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (N.Y. 1993)). A choice-of-law analysis "need not be performed unless there is an 'actual conflict' between the applicable rules of two relevant jurisdictions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (internal quotation marks and citations omitted). "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Id.*

Here, Adams only alleges claims under the state consumer protection law of Vermont. Dkt. 6, at ¶¶ 49–54. Thus, the Court need not determine whether there is an "actual conflict" between the consumer protections laws of New York and Vermont.[3]

New York "has adopted an 'interest analysis,' which requires that the law of the jurisdiction having the greatest interest in the litigation . . . be applied." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (quotation marks, citations, and alterations omitted). The New York Court of Appeals "has consistently explained that, for conduct-regulating rules, 'the law of the jurisdiction where the [alleged] tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50 (2d Cir. 2013) (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993). The

---

[3] The parties dispute whether there is an "actual conflict" between the VCPA and N.Y. Gen. Bus. Law ("GBL") §§ 349 and 350. Plaintiff argues that the consumer protection laws of Vermont and New York are "substantially similar." Dkt. 24, at 11–13. Defendant argues that the laws conflict, pointing to their statutes of limitations and availability of damages. Dkt. 26, at 6–7. As discussed above, Adams only pleads claims under the VCPA. In any event, the Court finds that an actual conflict exists between N.Y. GBL §§ 349 and 350 and the VCPA. Where "the applicable law from each jurisdiction provides different substantive rules, a conflict of laws analysis is required." *Pincheon v. Handy*, No. 1:12-CV-01161, 2014 WL 12923366, at *2 (N.D.N.Y. Apr. 4, 2014). Under the VCPA, deception is "measured by an objective standard, looking to whether the alleged representation or omission had the capacity or tendency to deceive a reasonable consumer; *actual injury need not be shown*." *Id.* at 56 (emphasis added). In contrast, N.Y. GBL §§ 349 and 350 require that a plaintiff allege he "*suffered injury as a result of the allegedly deceptive act or practice*." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted) (emphasis added). New York courts "have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead 'actual injury' for a Section 349 claim." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012); *see Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55–56 (N.Y. 1999) (rejecting the theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349"). Therefore, the Court concludes that there is an actual conflict between the consumer protection statutes of New York and Vermont.

consumer protection laws at issue here are conduct-regulating statutes. *See Miramontes v. Ralph Lauren Corp.*, No. 22-CV-04192 (CM), 2023 WL 3293424, at *12 (S.D.N.Y. May 5, 2023); *accord Bergeron v. Philip Morris, Inc.*, 100 F. Supp. 2d 164, 169–70 (E.D.N.Y. 2000) ("The consumer protection laws in question are conduct-regulating. These laws seek to prevent deceptive acts and practices and false advertising by merchants, service providers, and manufacturers that will adversely affect consumers and others."). Thus, when "courts apply this so-called interest analysis to . . . the consumer protections laws at issue here, the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered." *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008) (citing *Krock v. Lipsay,* 97 F.3d 640, 646 (2d Cir. 1996)).

Here, according to Adams's allegations, both the alleged deception and resulting injury occurred in New York, where Plaintiff viewed the Product's label and bought the Product. *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 35 (E.D.N.Y. 2020) (holding that plaintiffs "consumer protection injury takes place in the state where the drug is purchased"); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) ("[F]or purposes of conducting the interest analysis, the fraud of which each Settlement Class member complains occurred in the state where he purchased [the Product]."). Thus, New York law governs Plaintiff's consumer protection claim. Accordingly, the Court recommends that Adams's VCPA claim be dismissed.[4]

---

[4] Even if the Court were to consider Plaintiff's second amended complaint, the Court's recommendation would remain the same because Plaintiff did not plead a cause of action under N.Y. GBL §§ 349 and 350 in her second amended complaint. *See* Dkt. 17.

## II.    BREACH OF EXPRESS WARRANTY

To assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" N.Y. U.C.C. § 2–607(3)(a). Although "[t]he sufficiency and timeliness of the notice is generally a question for the jury," "courts have found some delays unreasonable as a matter of law." *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (citations omitted). "To satisfy the pre-suit notice requirement[,] 'the notice given by plaintiff had only to 'alert [defendant] that the transaction [was] troublesome and [did] not need to include a claim for damages or threat of future litigation.'" *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. 2021) (quoting *Cliffstar Corp. v. Elmar Indus., Inc.*, 254 A.D.2d 723, 724 (4th Dep't 1998)). But "to adequately plead the pre-suit notice requirement, 'plaintiff must provide factual allegations—such as the date and method plaintiff sent a pre-suit notice—supporting the contention that [she] notified [the] defendant of the alleged breach within a reasonable time.'" *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022) (quoting *Grossman*, 516 F. Supp. 3d at 283)).

Defendant argues that Plaintiff's express and implied warranty claims should be dismissed because Plaintiff failed provide pre-suit notice. Dkt 22-1, at 19–21. In the first amended complaint, Plaintiff alleges that she "provided or will provide notice to defendant, its agents, representatives, retailers, and their employees" and that "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices." Dkt. 6, at ¶¶ 58–59. These allegations are insufficient to meet the pre-suit notice requirement. *See*

*Gordon*, 2022 WL 836773, at *14 (finding allegations that "Plaintiff provided or will provide notice to [D]efendant, its agents, representatives, retailers and their employees" and "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices since the Product has been sold" insufficient to avoid dismissal); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021) (finding allegation that "[the] [d]efendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years" to be "too conclusory and . . . unsupported by any specific factual allegations" to satisfy the notice requirement for suit); *Grossman*, 516 F. Supp. 3d at 283 (finding plaintiff's allegation that "within a reasonable time after they knew or should have known of [the] [d]efendants' breach, [the] [p]laintiff, on behalf of herself and [c]lass [m]embers, placed [the] [d]efendants on notice of their breach, giving [the] [d]efendants an opportunity to cure their breach, which they refused to do" was "insufficient to plead pre-suit notice"); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *2 (S.D.N.Y. Mar. 30, 2018) (explaining that "[p]roper factual allegations should, at least, include the date and method by which [the] [p]laintiff afforded [pre-suit] notice to [the] [d]efendant," and dismissing claim for breach of express warranty where plaintiff "failed to allege any facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a reasonable time after its discovery").

Plaintiff argues that she provided notice within a reasonable time through filing this action in June 2021, and, alternatively, that the notice requirements in New York for breaches of warranty do not apply to retail sales. Dkt. 24, at 10–11. But "Plaintiff's

arguments that pre-suit notice is not required or, in the alternative, that Plaintiff's pleadings constitute notice, are unavailing." *Gordon*, 2022 WL 836773, at *14. "Although 'a minority of New York State cases suggest an exception to the notice requirement in retail sales . . . the exception appears to be exclusively applied when a party alleges physical, in addition to economic, injury." *Howze v. Mondelez Glob. LLC*, No. 22-CV-351 (JLS), 2023 WL 122307, at *5 (W.D.N.Y. Jan. 5, 2023) (quoting *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018)); *see Richards v. Johnson & Johnson, Inc.*, No. 517-CV-00178, 2018 WL 6573332, at *4 (N.D.N.Y. Dec. 13, 2018) (noting that the exception applies only to actions where personal injury is pleaded and that a similar "distinct treatment of warranty claims in personal injury cases is found in other jurisdictions"); *Tomasino*, 2015 WL 4715017, at *4 (rejecting the plaintiff's contention that the retail sale exception applies, because "every case . . . in which courts implementing New York law declined to apply the notice requirement . . . amounted to a tort claim in which the plaintiff suffered some personal injury"); *Colpitts*, 527 F. Supp. 3d at 589 (explaining that "[b]ecause [the] [p]laintiff only alleges economic injury in the form of a price premium paid for the [p]roduct, this exception—to the extent it exists at all—is inapplicable," and dismissing breach of express warranty claim for failure to allege pre-suit notice). Therefore, because "Plaintiff only alleges economic injury in the form of a price premium paid for" the Product, "this potential exception is inapplicable in this case." *Howze*, 2023 WL 122307, at *5.

Nor can Plaintiff rely on her allegation that she "satisfied the notice requirement by filing this lawsuit." *Id.* The "clear majority of courts in this [Circuit] have rejected arguments that . . . a plaintiff [may] satisfy the notice requirements by filing a complaint."

*Wheeler v. Topps Co., Inc.*, No. 22 CIV. 2264 (LGS), 2023 WL 405015, at *4 (S.D.N.Y. Jan. 25, 2023) (collecting cases); *see also Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 282 (S.D.N.Y. 2021) ("Courts addressing this issue have held that timely, *pre-litigation* notice is a condition precedent to bringing an action for breach of warranty.") (quotation marks and citation omitted) (emphasis added). Plaintiff's initiation of this action "does not establish that she provided 'notice *before* filing this lawsuit'—as New York law requires." *Howze*, 2023 WL 122307, at *5 (quoting *Brown v. Kerry Inc.*, No. 20CV9730PGGJLC, 2021 WL 5446007, at *8 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted*, No. 20CIV9730PGGJLC, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) (emphasis added)); *see Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020) (holding that plaintiff must allege some form of timely, *pre-litigation* notice) (emphasis added). Therefore, the Court recommends that Plaintiff's breach of express warranty claim be dismissed.

## III.    BREACH OF IMPLIED WARRANTY

The U.C.C.'s notice requirement "also applies to claims for breach of implied warranty." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 392 (S.D.N.Y. 2021). Thus, Plaintiff's "breach of implied warranty claim fails for the same reason as her express warranty: she fails to allege compliance with New York's notice requirement." *Devey v. Big Lots, Inc.*, No. 21-CV-6688L, 2022 WL 6827447, at *6 (W.D.N.Y. Oct. 12, 2022). Accordingly, the Court recommends that Plaintiff's claim for breach of implied warranty be dismissed for failure to provide pre-suit notice.

Defendant also argues that Plaintiff fails to state a claim because she does not allege that the Product is unfit for consumption. Dkt. 22-1, at 22. Plaintiff contends that whether the product is "unfit for consumption" is "only one factor in evaluating an implied

warranty claim." Dkt. 24, at 18. However, where "the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015); *see Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) ("A seller of food products, including a retailer, is bound by the implied warranty that foods sold are fit for human consumption and therefore merchantable."); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 686 (S.D.N.Y. 2021) ("[I]n order to breach the implied warranty of merchantability, the Product would have to have been unfit to drink."). Even "when misleading food packaging has been alleged, courts dismiss implied warranty of merchantability claims for failure to allege that the product was unfit for human consumption." *Brown*, 2021 WL 5446007, at *9. Here, Plaintiff's failure to allege the Product is unfit for human consumption is thus fatal to her breach of implied warranty claim. *See Budhani*, 527 F. Supp. 3d at 686 ("Because Plaintiff does not suggest that the Product is not fit for human consumption, he fails to state a claim for breach of the implied warranty of merchantability under New York law."); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) ("[B]ecause Plaintiffs do not suggest that the [powdered tea mix] products are not fit for human consumption, they fail to state a claim for breach of the implied warranty of merchantability under New York law."); *see also Devey*, 2022 WL 6827447, at *6 (dismissing claim for breach of the implied warranty claim for coffee product where plaintiff failed to "plausibly allege that the Product was unfit for human consumption"); *Howze*, 2023 WL 122307, at *5 (dismissing breach of implied warranty claim because plaintiff failed to allege that the defendant's cookies were "unfit to eat");

14

*Gordon*, 2022 WL 836773, at *15 (dismissing claim where plaintiff "did not allege that the Product was unfit for human consumption"); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021) (dismissing claim because plaintiff failed to allege that the drink was "unfit to drink"). The Court therefore recommends that Plaintiff's claim for breach of implied warranty be dismissed for failure to state a claim.

## IV.    MMWA CLAIM

Defendant argues that Plaintiff's Magnuson Moss Warranty Act ("MMWA") claim must also be dismissed for failure to plead pre-suit notice.[5] Dkt. 22-1, at 22. The MMWA grants relief to a consumer "who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty." *Wilbur v. Toyota Motor Sales, U.S.A.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2301(d)(1)) (internal quotations omitted). A written warranty is defined as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A).

Although the MMWA is a federal statute, "liability is premised on violations of state warranty laws." *Devey*, 2022 WL 6827447, at *6; *see also Cosgrove*, 520 F. Supp. 3d at 586 ("[T]he MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages.") (quotation

---

[5] Defendant also argues that the Product's representation of "90 CUPS" does not qualify as a written warranty under the MMWA, that Plaintiff's claim is pre-empted by federal labeling requirements, and that Plaintiff's claim is procedurally defective because there are not at least 100 named plaintiffs. Dkt. 22-1, at 22–24.

marks and citation omitted). Thus, to state a claim under the MMWA, "plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015); *see Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 (S.D.N.Y. 2020) ("To assert a breach of warranty claim under New York law — and, by extension, under the MMWA — the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") (quotation marks and citation omitted). As discussed above, the Court concludes that Plaintiff failed to state a claim for breach of express or implied warranty under New York law. Accordingly, the Court recommends that Plaintiff's MMWA claim be dismissed. *See Howze*, 2023 WL 122307, at *5 n.4 (dismissing MMWA claim "because Plaintiff ha[d] not adequately pleaded a cause of action for breach of warranty"); *Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 460 (S.D.N.Y. 2022) ("Because the Court has already found Plaintiff's claims for breach of express and implied warranty to be subject to dismissal, Plaintiff's claim under the MMWA is similarly dismissed."); *Valcarcel*, 577 F. Supp. 3d at 283 (dismissing MMWA claim because Plaintiff failed to provide pre-suit notice, and therefore had no viable state-law breach of warranty claims).

## V.    NEGLIGENT MISPRESENTATION[6]

Defendant primarily argues that Plaintiff has failed to allege any special relationship between herself and Defendant and that basic commercial transactions do not give rise to the requisite special relationship. Dkt. 22-1, at 24–25. According to

---

[6] Negligent misrepresentation claims are subject to the heightened pleading standard under Rule 9(b). *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (stating negligent misrepresentation claims under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)").

Plaintiff, her transaction with Defendant was not a "basic commercial transaction" because Defendant promised that "[her] family always comes first." Dkt. 24, at 20. Moreover, Plaintiff contends that "by its extra-label promotion of 'Tops Brand Products' as uniquely capable to deliver 'high-quality foods at an affordable price,' Defendant highlighted its 'special knowledge and experience [in] this area.'" *Id.*

To state a claim for negligent misrepresentation under New York law, a plaintiff must show that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). But "where the statement at issue is directed at a 'faceless of unresolved class or persons,' no duty of care arises." *Aetna Cas. & Sur. Co.*, 404 F.3d at 584.

To determine the existence of a special relationship, New York Courts look to three factors: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257 (N.Y. 1996)).

Courts have "routinely held that an arms-length commercial transaction, without more, does not give rise to a special duty to speak with care." *Henneberry v. Sumitomo*

*Corp. of America,* 532 F. Supp. 2d 523, 539 (S.D.N.Y. 2007). The relationship between the parties "must instead 'suggest a closer degree of trust and reliance than that of the ordinary buyer and seller.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, No. 00-cv-1657, 2002 WL 31453789, at *3 (S.D.N.Y. Oct. 31, 2002)). Thus, "[c]ourts addressing negligent misrepresentation claims in connection to allegedly deceptive product labels have routinely held that no special relationship exists between a supermarket and an ordinary consumer." *Valcarcel*, 577 F. Supp. 3d at 281 (collecting cases).

Here, Plaintiff's allegations describe a relationship which is that of an ordinary buyer and seller. Plaintiff alleges that Defendant owes a duty "based on [its] position, holding itself out as having special knowledge and experience in this area." Dkt. 6, at ¶ 63. But Plaintiff's "bare and conclusory assertion that [Defendant] has special expertise in an area of production or sale of a product is not sufficient to plead a special relationship." *Miramontes*, 2023 WL 3293424, at *13; *see, e.g., Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *5 (S.D.N.Y. Jan. 28, 2022) (finding no special relationship where plaintiff alleged that a duty existed "based on defendant's position as an entity, which has held itself out as having special knowledge and expertise in the production, service, and/or sale of the product type" because "case law is clear that the transactions alleged are insufficient to establish a special relationship for the purposes of a negligent representation"); *Brown*, 2021 WL 5446007, at *7 ("Although [Plaintiff] argues that [Defendant] had 'special knowledge and experience' in the production and sale of the Product, . . . nothing in the Complaint

suggests that the parties were engaged in anything more than basic commercial transactions in 2019 and 2020."); *Twohig*, 519 F. Supp. 3d at 166–67 (dismissing a negligent misrepresentation claim because no special relationship was alleged when Plaintiff merely alleged, in a conclusory manner, that Defendant "held itself out as having special knowledge and expertise in product, service and/or sale of the product type").

Nor do Plaintiff's allegations that "TOPS private labels have an industry-wide reputation for quality and value[,]" and that "TOPS promotes these attributes of its private label offerings on its website" change this analysis. Dkt. 6, at ¶¶ 4, 5. Plaintiff "do[es] not cite any cases in support of the proposition that a special relationship may be based on an advertisement directed at consumers and intended to induce reliance[,] and courts have consistently held that advertisements alone are not sufficient." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (collecting cases); *see also Chung v. Igloo Prod. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *16 (E.D.N.Y. July 8, 2022) (same) (collecting cases); *Eidelman v. Sun Prod. Corp.*, No. 16-CV-3914 (NSR), 2017 WL 4277187, at *5 (S.D.N.Y. Sept. 25, 2017) (representations made by Defendants on their website and Label—"that their products were 'clinically proven' to be gentle on skin, and were '#1' recommended by dermatologists and allergists" were insufficient to "overcome the presumption that advertisements are generally insufficient to establish such a relationship").

Similarly, Plaintiff "cite[s] no support for the notion that a supermarket's generally favorable reputation can render a sale something 'more than an arms-length

commercial transaction.'" *Valcarcel*, 577 F. Supp. 3d at 281–82 (quoting *Stoltz*, 2015 WL 5579872, at *24); *see Devey*, 2022 WL 6827447, at *7 ("[P]laintiff's self-serving and conclusory claims that [Defendant] enjoys a 'best-in-class' reputation for 'customer service and integrity,' with an attendant duty to accurately represent its products, could be applied to millions of manufacturers and retailers: they do not plausibly describe a relationship of unique 'trust and confidence' beyond that of a typical manufacturer and purchaser, or otherwise suggest that any special relationship existed."). The "non-specific assertion of a 'quality' and 'trust' guarantee cannot not plausibly be interpreted as a representation of expertise in this context[.]" *Id.* at 282 (holding that allegations that Defendant was a "supermarket with an established reputation for quality, as promised through the front label seal," referring to the seal on the front of the product's packaging 'promising a 100% Quality & Trust Guarantee'" were insufficient to create a special relationship) (quotation marks omitted). Accordingly, the "status of a retailer as a 'trusted brand . . . does not give rise to a duty to impart correct information, as the plaintiffs comprise a 'faceless o[r] unresolved class' of consumers." *Colpitts*, 527 F. Supp. 3d at 587 (quoting *Sarr*, 2020 WL 729883, at *6); *see Clemmons v. Upfield US Inc.*, No. 22-CV-355 (PKC), 2023 WL 2752454, at *10 (S.D.N.Y. Mar. 31, 2023) (complaint alleging the defendant "ha[d] a 'duty to truthfully represent' the Product on account of the company's 'special knowledge and experience' and market position as a 'trusted company, known for its transparent labeling'" did not plausibly allege a special relationship). The "only described contact between the parties is that [Plaintiff], like many other consumers, viewed and purchased [Defendant]'s product. This indirect, attenuated relationship is insufficient to impose a duty upon [Defendant]." *Clemmons*,

2023 WL 2752454, at *10; *see also Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 176 (S.D.N.Y. 2022) ("Plaintiff's allegations here only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller—which does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation."). The Court therefore recommends that Plaintiff's negligent misrepresentation claim be dismissed.[7]

## VI.    FRAUD

To state a fraud claim under New York law, "a plaintiff must allege '(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.'" *Howze*, 2023 WL 122307, at *6 (quoting *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021)). A claim of fraud "must be alleged with the particularity required by Rule 9(b), Fed. R. Civ. P., which 'requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or

---

[7] Even if Plaintiff has adequately alleged a special relationship, her claim is barred under New York's economic loss rule. Under New York's economic loss rule, "a plaintiff may only assert a claim for negligent misrepresentation if he or she alleges personal or property damage, as opposed to economic loss." *Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526 (KBF), 2017 WL 213815, at *4 (S.D.N.Y. Jan. 18, 2017). Here, the "only cognizable injury alleged in connection with [P]laintiff's negligent misrepresentation claim is economic loss, i.e., that plaintiff and the putative class members purchased products they would have otherwise purchased at a lesser price or not at all." *Id.* Thus, "[i]n the absence of any alleged personal or property damage, the economic loss rule bars [P]laintiff's negligent misrepresentation claim." *Id.*; *see Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a negligence action seeking recovery for economic loss will not lie."); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim because plaintiff alleged economic loss, but not personal or property injury).

omissions) are fraudulent.'" *Santiful*, 2022 WL 268955, at *6 (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted)).

While "Rule 9(b) permits a plaintiff to allege scienter generally," the Second Circuit "has 'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.'" *Id.* (quoting *United States ex rel. Tessler v. City of New York*, 712 Fed. App'x 27, 29 (2d Cir. 2017)) (summary order). Accordingly, "conclusory assertions of intent are sufficient 'if supported by facts giving rise to a strong inference of fraudulent intent.'" *Aetna Cas. & Sur. Co.*, 404 F.3d at 579 (quoting *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir. 1993)). A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). But the "simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)).

Here, Plaintiff fails to allege the requisite fraudulent intent. In the first amended complaint, she alleges that "Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they could make the number of cups promised on the label" and that "Defendant's fraudulent intent is evinced by its knowledge that the Product was

22

not consistent with its representations." Dkt. 6, at ¶¶ 67–68. Plaintiff's "conclusory assertion[] of intent" is therefore insufficient because it is not "supported by facts giving rise to a strong inference of fraudulent intent." *Aetna Cas. & Sur. Co.*, 404 F.3d at 579. Plaintiff "does not set forth any facts that establish a fraudulent motive on the part of the defendant, or that strongly suggest reckless disregard for accurate labeling." *Devey*, 2022 WL 6827447, at *8.

Moreover, Plaintiff's allegation that Defendant knew that the Product was inconsistent with its representations does not establish fraudulent intent because "simple knowledge that a statement is false is not sufficient to establish fraudulent intent." *Davis*, 297 F. Supp. 3d at 337; *see Howze,* 2023 WL 122307, at *6 (allegation that *"*Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations" insufficient to allege fraudulent intent); *Santiful*, 2022 WL 268955, at *7 (allegations that manufacturer failed to accurately describe a product on its label and in its ingredient list, when it "knew its statements were neither true nor accurate" and would mislead consumers, were insufficient to give rise to an inference of fraudulent intent); *Colpitts*, 527 F. Supp. 3d at 585–86 (same for allegation that "[d]efendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate"); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (conclusory allegations that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true" insufficient to allege fraudulent intent). Therefore, the Court recommends that Plaintiff's fraud claim be dismissed for failure to state a claim.

## VII.    UNJUST ENRICHMENT

To state a claim for unjust enrichment, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (internal quotation marks and citation omitted). But an unjust enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012).

Plaintiff alleges that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." Dkt. 6, at ¶ 69. Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because it merely duplicates her tort claims. Dkt. 22-1, at 27–28. In response, Plaintiff contends that Fed. R. Civ. P. 8(d)(2) allows her to plead alternative claims. Dkt. 24, at 21. It is "certainly true, as Plaintiff argues, that [s]he may plead unjust enrichment in the alternative to h[er] other claims. *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). But "it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Id.*; *see also Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526 (KBF), 2017 WL 213815, at *7 (S.D.N.Y. Jan. 18, 2017) ("Although Rule 8(d) permits a plaintiff to plead alternative—and even inconsistent—theories of liability, . . . an unjust enrichment claim must be dismissed when it entirely 'duplicates' other tort or contract claims.") (internal citations omitted).

Here, Plaintiff's unjust enrichment claim is based on the same facts underlying her tort claims, and Plaintiff does not argue otherwise. *See* Dkt. 24, at 21. Thus, the Court recommends that Plaintiff's unjust enrichment claim be dismissed. *See, e.g.*, *Devey*, 2022 WL 6827447, at *9 (dismissing unjust enrichment claim because it "relie[d] on the same operative facts as [plaintiff's] other claims"); *Hain Celestial Grp.*, 2017 WL 213815, at *7 (dismissing unjust enrichment claim because it was based on "the very same conduct underlying her other claims"); *Weisblum*, 88 F. Supp. 3d at 297 ("[B]ecause [plaintiff] has not shown that his unjust enrichment claim differs from his contract and tort claims, it must be dismissed."); *Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at *7 (dismissing unjust enrichment claim where plaintiffs "failed to explain how their unjust enrichment claim [was] not merely duplicative of their other causes of action").

## VIII.    STANDING TO SEEK INJUNCTIVE RELIEF

Defendant also moves to dismiss Plaintiff's claim for injunctive relief, arguing that she lacks standing. *See* Dkt. 22-1, at 28–29. Plaintiffs "lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). Although "past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id*.

The Second Circuit "has determined that, absent an intent to 'purchase the offending product in the future,' a plaintiff in a deceptive business practice action lacks standing to seek injunctive relief." *Howze*, 2023 WL 122307, at *7 (quoting *Kommer v.*

*Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (summary order) (alterations omitted)); *see also Nicosia*, 834 F.3d at 239 (plaintiff failed to establish likelihood of future harm where "he has not shown that he is likely to be subjected to further sales by Amazon of products *containing sibutramine*") (emphasis added). Accordingly, "courts have since relied on *Kommer* to hold that named plaintiffs who had discovered the defendants alleged wrongdoing did not have standing to seek injunctive relief." *In re Amla Litig.*, 320 F. Supp. 3d 578, 593 (S.D.N.Y. 2018). Because "a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, 'there is no danger that they will again be deceived by them.'" *Davis*, 297 F. Supp. 3d at 338 (quoting *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015)).

Plaintiff alleges that she "will purchase the Product again when she can do so with the assurance that [the] Product's representations are consistent with its composition." Dkt. 6, at ¶ 40. But her allegation that she will purchase the product in the future *only when, and if,* Defendant changes the labeling or Product is insufficient to establish standing. *See Howze*, 2023 WL 122307, at *8 (allegation that plaintiff "would purchase the product again only 'when she can do so with the assurance that the Product's representations are consistent with its abilities, attributes, and/or composition'" was insufficient to establish standing); *McCall v. Publix Super Markets, Inc.*, No. 8:22-CV-584-MSS-CPT, 2023 WL 2362542, at *7 (M.D. Fla. Feb. 28, 2023) ("[Plaintiff's] allegation that she cannot purchase the Product until Defendant corrects the representations does not suffice to plead a future injury because any harm caused to Plaintiff by her decision not to purchase a product she now knows contains artificial

flavoring, or her decision to do so once the labeling is corrected, is self[-]inflicted."). In short, "Plaintiff concedes that she would not have purchased [the Product] had she known of [its] true composition. And now that she is aware that the [Product] do[es] not contain [90 cups], she states that she does not intend to purchase [it] again—unless Defendant changes either the product or the labeling." *Howze*, 2023 WL 122307 at *8. Accordingly, because "Plaintiff admits that she is unlikely to purchase the product unless the product is changed, she lacks standing to seek injunctive relief." *Id.* Therefore, the Court recommends that Plaintiff's claim for injunctive relief be dismissed.[8]

## IX.    LEAVE TO AMEND

In her opposition brief, Plaintiff requested, in the alternative, that the Court grant leave to file an Amended Complaint. Dkt. 24, at 22. The Court may deny leave to amend if any amendment would be futile. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). An amendment to a pleading "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Id.* The Court recommends that Plaintiff's request for leave to amend its complaint to assert a cause of action under New York GBL §§ 349 and 350 be granted. However, the Court finds that any amendment to Plaintiff's remaining claims would be futile, even when considering Plaintiff's second amended complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir. 1991) ("[W]here a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend."). Therefore, the

---

[8] The named plaintiff "must have standing in order to seek injunctive relief on behalf of the class." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016). Here, because "Plaintiff does not individually have standing to seek injunctive relief, she also lacks standing to seek injunctive relief on behalf of any class." *Howze*, 2023 WL 122307, at *8.

Court recommends that leave to amend be denied as to Plaintiff's claims for breach of express and implied warranties, MMWA, negligent misrepresentation, fraud, unjust enrichment, and injunctive relief.

## CONCLUSION

For the above reasons, Defendant's motion to strike the second amended complaint in its entirety (Dkt. 22) is GRANTED. The Court RECOMMENDS that Defendant's motion to dismiss (Dkt. 8) the first amended complaint be GRANTED in its entirety. Further, the Court RECOMMENDS that Plaintiff's request for leave to amend be GRANTED as to its state consumer protection claims, and DENIED as to its claims for breach of express and implied warranties, MMWA, negligent misrepresentation, fraud, unjust enrichment, and injunctive relief.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.**

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **July 7, 2023**
               **Buffalo, New York**

                               *s/ H. Kenneth Schroeder, Jr.*
                               **H. KENNETH SCHROEDER, JR.**
                               **UNITED STATES MAGISTRATE JUDGE**